IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JASMIN K. WHITE,
      Plaintiff,

v.                                Case No.: 3:13cv532/MCR/EMT

SACRED HEART HEALTH
SYSTEM, INC.,
      Defendant.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

      This cause is before the court upon referral by the district court pursuant to Fed.

R. Civ. P. 72(b), N.D. Fla. Loc. R. 72.3, and 28 U.S.C. § 636(b)(1)(B), to conduct any

evidentiary or such other necessary proceedings and to enter a Report and

Recommendation on a Renewed Motion for Rule 37(d) Sanctions (ECF No. 173) filed

by Plaintiff, and a response in opposition thereto (ECF No. 185) filed by Defendant

(*see* ECF No. 186).  For the reasons that follow, the court recommends that Plaintiff's

renewed motion for sanctions be denied.

      <u>Plaintiff's Allegations</u>

      Plaintiff Jasmin K. White ("White") brought suit against her former employer,

Defendant Sacred Heart Health System, Inc. ("Sacred Heart"), alleging claims of

wrongful termination and retaliation in violation of Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981, as well as Title VII claims of sexual harassment and race retaliation under 42 U.S.C. § 1981. The sexual harassment and race relation claims were dismissed on Sacred Heart's motion (*see* ECF No. 60); Plaintiff's remaining claims survived Sacred Heart's motion for summary judgment and are now set for a jury trial on May 16, 2016 (*see* ECF Nos. 159, 163).

The facts that underlie Plaintiff's remaining claims, as set forth in the district court's order of September 21, 2015, denying summary judgment (ECF No. 159), are as follows:

White, an African American female, was employed by Sacred Heart as a medical associate from September 6, 2012, through April 18, 2013. She was hired by Jackie Semelsberger, who also was White's immediate supervisor. White alleges that on November 16, 2012, while she was talking with a group of co-workers, Semelsberger yelled to her, "Hey you, black girl." [White made no complaint about this comment].

In December 2012, while in a medical examination room with a white, male patient in his mid-seventies ("W"), White inquired about W's medications, and W responded that if he had her at his home, he would not need Viagra. [At the summary judgment stage, a question of fact arose and could not be resolved as to whether W was actually seen in the clinic in December 2012]. White testified that she did not take this as a joke but was offended and left the room. White reported the incident to Semelsberger, and according to White, Semelsberger laughed.

On April 17, 2013, White was again alone in a medical examination room with W, and White said he asked her whether she

lived alone.  She told him she lived with her parents, and he said, "If you ever live alone, I will offer you $100 for 30 minutes of your services." White began to walk away, and the patient warned her not to tell anyone what he had said.  White immediately reported the incident to her manager, Semelsberger, and the patient's physician, Dr. Kinzelman.  Dr. Kinzelman took over the examination and instructed Semelsberger to write a termination letter to the patient.  White also contacted Amy Herrington, Semelsberger's direct supervisor, who asked White to write up a statement of what had happened.  The same day, White told her father about the incident, and when he asked her for the patient's name, she told him.  White's father contacted W, and W's family contacted Sacred Heart to complain about this release of information.  That afternoon, White faxed to Herrington her hand-written account of her conversation with her father, explaining what had happened and admitting that she had revealed W's name to her father.

According to White, on the morning of April 18, Dr. Hickman told her that releasing the name was not a HIPAA violation.  Later, however, White was called to Semelsberger's office, and Semelsberger informed her, with Dr. Hickman present, that she would have to turn in her badge because of the incident the previous day.  Herrington called White that afternoon to formally inform her of her termination due to the HIPAA violation.

There is evidence that Herrington and Michelle Hope, Associate Relations Consultant, prepared White's termination paperwork based on the HIPAA violation but that before it was given to White, Semelsberger terminated her employment in the computer system.  In emails between Hope and Herrington at the time, they discuss that Semelsberger had been instructed to contact White and suspend her pending further investigation, but instead, Semelsberger terminated White's employment. Hope's handwritten notation on the termination form stated that White was "Termed by Manager w/out HR."  Hope attempted to explain by affidavit that her notation meant only that Semelsberger should have waited for the paperwork before entering the termination in the computer, not that this was a policy violation.  However, the record also

reflects an email from Hope to Semelsberger on April 18 inquiring as to why White was terminated as opposed to suspended and stating that this procedure was not in accordance with Sacred Heart's human relations procedures. Sacred Heart's corporate representative, Patricia Brown, testified that Semelsberger failed to follow suspension protocols. The record contains no testimony or affidavit from Herrington or Semelsberger.

Brown testified about another employee's termination for a HIPAA violation. Tia Rollo, who is a Native Pacific Islander, was also a Medical Associate supervised by Herrington. According to Brown and Sacred Heart records, Rollo was friends with a patient's estranged husband and revealed protected patient information to the husband after accessing the physician's notes on three separate occasions. Rollo was initially suspended pending an investigation and subsequently terminated for this HIPAA violation.

(ECF No. 159 at 1–3).

<u>Background Relevant to the Instant Dispute</u>

On February 9, 2015, White filed a motion for sanctions under Fed. R. Civ. P. 37(d)(1)(A) based upon Sacred Heart's alleged failure to comply with Rule 30(b)(6), by failing to produce a corporate representative for a deposition held on January 7, 2015, and continued on January 13, 2015, who could testify to various areas of inquiry (identified by White as "specifications") set forth in White's deposition notice (*see* ECF No. 96). More specifically, White contended that Patricia Brown, the corporate representative designated by Sacred Heart, was unprepared or unable to provide

testimony as to specifications numbered 6, 7, 8, 9, 13, and 15.  The specifications at

issue were:

6. Identification of the facts and information which support Sacred Heart's position that Ms. White violated HIPAA by disclosing the name of the person who made the inappropriate sexual offers.

7. The factual grounds and information relied upon by Sacred Heart's [sic] in its representations to the U. S. Equal Employment Opportunity Commission concerning Ms. White's Charge of Discrimination, including its proffered explanations for its conduct toward Ms. White on April 17–18, 2013, any investigation results concerning Sacred Heart's investigation of Ms. Whites [sic] discrimination complaint, a description of all corrective action taken by Sacred Heart in compliance with the settlement agreement reached with the EEOC, and a description of all communications between Sacred Heart and Ms. White and/or her attorney, related to the settlement efforts between Sacred Heart and the EEOC concerning her EEOC complaint.

8. The factual grounds and information relied upon by Sacred Heart in preparation of any reports to the State of Florida, or any other organization, related to the alleged HIPAA violations committed by Ms. White.

9. The factual grounds and information relied upon by Sacred Heart in support of the Amended Affirmative Defenses One through Thirteen, contained in its Answer to Ms. White's Amended Complaint (Doc. 31).

13. The factual grounds and information supporting Defendant's Responses Plaintiff's Production [sic] Requests 1–30, Defendant's Amended Responses to Plaintiff's Production Requests 1–30, Defendant's Responses to Plaintiff's Production Requests 31–32, Defendant's Amended Responses to Plaintiff's Production Requests 31–32, Defendant's Responses to Plaintiff's Production Requests 33–53, and Defendant's Amended Responses to Plaintiff's Requests 33–53.

15.     The factual grounds and information supporting Sacred Heart's Second
        Amended Responses to Plaintiff's Interrogatories 1–13, dated 10/24/14.

(ECF No. 96).

As to specifications numbered 6, 7, and 8, White contended that Ms. Brown was unprepared to answer deposition questions; and as to specifications numbered 9 and 13, White contended that Ms. Brown was prohibited from answering deposition questions due to allegedly improper objections lodged by Sacred Heart's counsel (i.e., "calls for a legal conclusion" as to specification number 9 and "work-product," "attorney-client privilege," or "form of the question" as to specification number 13) (ECF No. 96).[1]  As to specification number 15, White complained that Ms. Brown gave evasive answers and failed to answer questions related to Sacred Heart's response to interrogatory No. 12[2] (*id*.).  As relief, White asked that Sacred Heart be precluded from offering any trial testimony on the subject matters set forth in the above-referenced specifications (*id*.).

---

[1] Sacred Heart's counsel also asserted various objections to the questions relating to specifications numbered 6, 7, and 8, but White's primary contention in the earlier motion for sanctions as to those specifications was that Ms. Brown was unprepared to answer questions (*see* ECF No. 96 at 11–16).

[2] Interrogatory No. 12 concerned Sacred Heart's discipline of employees, within the past five years, for HIPAA violations "limited to the charge of releasing a patient's name," and asked that Sacred Heart identify all such employees, as well as their race and sex, date of the violations, action taken against the employees, and other information related to the discipline (ECF No. 96-5 at 68).

The undersigned denied White's motion without prejudice, as premature, given that Sacred Heart's motion for summary judgment was pending and that settlement appeared to be possible.  The undersigned noted, "Only if this case proceeds to trial, Defendant indeed intends to offer the testimony Plaintiff seeks to exclude, and the parties have not previously settled the issues raised in the instant motion, will the motion be ripe for resolution." (ECF No. 122).

On February 10, 2015, the day after White filed her first motion for sanctions, she filed a motion to compel Sacred Heart's responses to interrogatories numbered 15 and 19; specifications numbered 7, 8, and 15; and request for production ("RFP") number 54 (ECF No. 97).  The discovery requests at issue in White's motion to compel (in addition to specifications numbered 7, 8, and 15, cited above[3]), were:

> Int. No. 15.   If not previously identified, please identify each document relied upon by each of Sacred Heart's witnesses in support of their responses, at the deposition conducted pursuant to Fed. R. Civ. P. Rule 30(b)(6).

> Int. No. 19.   Please identify each document, not identified in your previous discovery responses, that supports any of the denials in your Amended Complaint, or the Affirmative Defenses in your Amended Complaint.

---

[3] Again, with respect to specification number 15, the underlying interrogatory at issue was interrogatory number 12 (*see* ECF No. 97 at 3).

> RFP No. 54 A copy of all documents identified in response to Plaintiff's
> Interrogatories 14 through 19.

(ECF No. 97).

White's motion to compel was denied as untimely (ECF No. 98), but the undersigned later accepted its late filing and deemed it timely filed under the relevant excusable neglect standard (*see* ECF No. 113).  In the same order the undersigned directed the parties to meet and confer in a good-faith effort to resolve the issues in dispute in the motion to compel (*see id*.).  Then, after reviewing Sacred Heart's response in opposition to White's motion (ECF No. 114), the undersigned directed White to file a reply (ECF No. 117).  White responded by filing a notice with the court indicating that the issues raised in her motion to compel had been resolved (ECF No. 120).  Accordingly, White's motion to compel was denied as moot (ECF No. 121).

Discovery in this case closed in early 2015, Sacred Heart's motion for summary judgment was denied in September 2015, a settlement conference resulted in an impasse in October 2015, and on October 9, 2015, the district court scheduled this case for trial on May 23, 2016.  As previously noted, this matter is now before the court upon White's "Renewed Motion for Rule 37(d) Sanctions and Incorporated Memorandum of Law," filed November 25, 2015 (ECF No. 173).

<u>The Instant Motion for Sanctions</u>

The introduction to White's instant motion states:  "[T]he Sacred Heart designee was not adequately prepared to give complete, knowledgeable and binding answers on its behalf, concerning the factual grounds and information it relied upon in its defense . . . [and therefore] Sacred Heart should be sanctioned pursuant to Fed. R. Civ. P. 37(d) ("FRCP"), for its failure to comply with the spirit, intent, and the provisions of FRCP 30(b)(6)." (ECF No. 173).  White then provides her account of discovery-related events that transpired between August and November of 2014 and January and March of 2015 (*id*. at 3–4).  Next, White states: "The primary issue related to discovery with respect to the Rule 30(b)(6) motion, is Sacred Heart's response to Plaintiff's Interrogatories No. 1 - 13, and, in particular, Interrogatory No. 12, served on December 27, 2013." (*id*. at 5).  In a somewhat convoluted discussion, White then appears to complain of problems that arose during the Rule 30(b)(6) deposition due to Sacred Heart's deficient, incomplete, or otherwise improper responses to interrogatory number 15 and RFP number 54 (*see id*. at 6–7, 14).  White also claims the "entire [Rule 30(b)(6)] deposition was impeded, delayed, and frustrated by the fact that the witness [Patricia Brown] had not been properly prepared, she provided evasive answers, and would not respond to questions" (*id*.).

Continuing, White alleges that during Ms. Brown's deposition Sacred Heart's counsel "repeatedly interrupted the questioning, improperly instructed the witness not to answer the questions, and generally frustrated the process" (ECF No. 173 at 8–9). White includes approximately eighteen excerpts from the deposition transcript in support of her allegations (*id*. at 9–11).   White then discusses "specific problems related to certain specifications," namely, specifications numbered 7, 8, 9, 13, and 15[4] (*see id*. at 11–13).   White additionally notes that on February 13, 2015, "Patricia Brown submitted a document entitled 'Corrections to the Deposition of Patricia Brown,'" which "made substantive changes to Specifications 3, 4, 6, 7, 9, and 12" and which "was not executed under an oath, or under a penalty of perjury" (*id*. at 7–8).

In conclusion, White generally argues that Ms. Brown was not prepared to testify regarding various specifications, that she improperly failed to identify the documents upon which she relied in testifying, and that she improperly corrected her deposition testimony after-the-fact (*see* ECF No. 173 at 13–19).   White also claims that Sacred Heart's objections during the deposition were unfounded (*id*. at 19–23).

---

[4] As with White's first motion for sanctions and her prior motion to compel, White explains that specification number 15 relates to interrogatories numbered 1–13 and that the matter at issue in the instant motion for sanctions concerns interrogatory number 12 (*see* ECF No. 173 at 11–12).

As relief, White asks that Sacred Heart be precluded from offering any trial testimony "on the specifications which its Rule 30(B)(6) [sic] designee was unable to provide responses" (*id*. at 23).  Alternatively, White asks that the discovery period be reopened for the limited purpose of conducting a "repeat deposition," with Sacred Heart bearing the costs and fees incurred in connection with any such deposition (*id*. at 24).

Sacred Heart strongly opposes White's motion (*see generally* ECF No. 185). Sacred Heart contends that White previously represented to this court that most if not all the issues raised in the instant motion for sanctions had been resolved, and that any issue that was not previously resolved is either irrelevant to the claims and defenses in this action or has been untimely raised.  Additionally, Sacred Heart disputes White's contention that Ms. Brown was ill-prepared for her deposition, notes that Ms. Brown has already appeared on two separate dates for her deposition (her deposition began on January 7, 2015, but was suspended on that date and she returned on January 13, 2015, to complete it), and contends that no good basis exists for requiring her to be deposed again.  Sacred Heart further contends that its counsel acted in good faith at the deposition and lodged valid objections during the deposition.  Sacred Heart also

contends that the errata sheet completed by Ms. Brown after her deposition complied with Fed. R. Civ. P. 30, and that White is entitled to no relief whatsoever.

<u>Discussion</u>

●     Specifications Numbered 7, 8, and 15; Interrogatory Number 15; and RFP Number 54

As can be seen from the lengthy background set forth above, White previously brought before this court a motion to compel in which she raised five issues that have been raised again in the instant motion, namely, issues relating to specifications numbered 7, 8, and 15; interrogatory number 15; and RFP number 54.  As also explained above, White previously advised the court, by a notice submitted to the court now nearly one year ago, that these issues had been resolved (*see* ECF No. 120; *see also* ECF No. 117).[5]  Simply put, White should not be permitted to re-raise issues that she herself reported had been resolved, much less without offering any explanation as to why the issues are now apparently unresolved, and even much less at this late juncture.  Thus, the motions for sanctions as to these matters should be denied.

---

[5] To be sure, White's notice of resolution was filed after Patricia Brown's Rule 30(b)(6) deposition had occurred.

- Specifications Numbered 9 and 13

As noted above, but reiterated here for ease of reference, specification 9 concerns, "The factual grounds and information relied upon by Sacred Heart in support of the Amended Affirmative Defenses One through Thirteen in Answer to Ms. White's Amended Complaint."  And specification 13 concerns, "The factual grounds and information supporting Defendant's Responses Plaintiff's Production [sic] Requests 1–30, Defendant's Amended Responses to Plaintiff's Production Requests 1–30, Defendant's Responses to Plaintiff's Production Requests 31–32, Defendant's Amended Responses to Plaintiff's Production Requests 31–32, Defendant's Responses to Plaintiff's Production Requests 33–53, and Defendant's Amended Responses to Plaintiff's Requests 33–53."

White raised issues as to these specifications in her first motion for sanctions, which was denied without prejudice, and she has re-raised them in the instant motion for sanctions.  The undersigned generally views the instant motion as untimely, but notes that these two specifications are the only two that were raised initially in the motion for sanctions but <u>not</u> re-raised in White's motion to compel (and thus were not included in White's earlier notice of resolution).  Therefore, the undersigned briefly discusses the merits of these claims here.

As to specification number 9, Sacred Heart's counsel objected during Ms. Brown's deposition that White's questions regarding Sacred Heart's legal defenses called for a legal conclusion and thus were improper.  The undersigned agrees.  Ms. Brown, a non-attorney, could not be expected to testify reliably and completely regarding the bases and contentions for the myriad and complex legal defenses asserted by Sacred Heart in its Answer to White's Amended Complaint (*see* ECF No. 61 at 5–8 (Answer, setting forth, among other affirmative defenses, failure to state a claim upon which relief may be granted, failure to exhaust administrative remedies, waiver, laches, estoppel, and assertions that certain claims for damages are barred, limited, or otherwise subject to reduction based on various legal theories)).

As to specification number 13, the described area of inquiry is overbroad on its face.  What is more, White concedes that her main point at the deposition was to determine whether any additional documents responsive to the underlying RFPs (i.e., those numbered 1–53) had been discovered since Sacred Heart provided its initial or amended responses to the RFPs (*see* ECF No. 173 at 13).  To the extent any such additional documents existed, Sacred Heart was well aware of its continuing obligation to supplement its RFP responses.  *See* Fed. R. Civ. P. 26(e)(1)(A).  If it did not disclose any additional documents to White, the court must conclude—as should

White—that absent anything other than mere speculation and the passage of time (the only bases offered by White for her belief that Sacred Heart might have possessed additional documents (*see* ECF No. 173 at 13)), that no additional documents existed or were subject to disclosure.  Thus, even if the objections by Sacred Heart's counsel as to specification number 13 were improper—a finding the undersigned does not and need not make—there is no harm to White or reason to believe that Sacred Heart failed to comply with its discovery obligations.[6]

- Interrogatory Number 12

The motion for sanctions as to this interrogatory is due to be denied as untimely.  White served interrogatory number 12 upon Sacred Heart on December 27, 2013, and Sacred Heart responded on January 24, 2014 (ECF No. 173 at 5).  In its response Sacred Heart objected to the interrogatory on the grounds that it was overly broad (i.e., as to its time frame and subject matter), unduly burdensome and oppressive, vague and ambiguous, asked for irrelevant information, and asked for information protected by HIPAA and the attorney-client and work-product privileges (ECF No. 175-4 at 48).  Despite its objections, however, Sacred Heard identified an

---

[6] It bears noting that only one request for documents was ever the subject of a discovery motion brought by White, namely, RFP number 54, which is not included in specification number 13.  As noted *supra*, however, White advised the court that all matters relating to RFP number 54 were resolved.

employee, Tia Rollo, who had been disciplined in the past five years for "HIPAA violations limited to the charge of releasing a patient's name . . ." (*id*. at 47–48).  As requested by the interrogatory, Sacred Heart also identified Ms. Rollo's race and sex, and it identified documents—by "Bates stamp" page number—regarding Ms. Rollo's termination, which documents had previously been provided to White by Sacred Heart (*id*. at 48).

On February 11, 2014, shortly after Sacred Heart responded to White's interrogatory, the district court entered an order staying all discovery and staying all deadlines set forth in the Final Scheduling Order ("FSO") (ECF No. 34).  The stay was lifted on August 1, 2014 (ECF No. 60), and an Amended FSO issued on August 20, 2014 (ECF No. 68).  The discovery deadline was set for January 30, 2015 (*id*.).  No filings of any substance were made during the nearly six-month period that followed the issuance of the Amended FSO.[7]  Indeed, it was not until February 9, 2015, when White filed her first motion for sanctions—after the discovery deadline had passed—that the court became aware of any discovery-related dispute between

---

[7] Between the issuance of the Amended FSO and the filing of White's first motion for sanctions, the parties submitted a joint motion for court approval of a confidential agreement relating to the exchange of discovery materials protected under HIPAA, which was granted (ECF Nos. 91, 92); mediation was scheduled, which resulted in an impasse (ECF No. 86, 95); and the parties submitted attorney time records (citations omitted).

the parties.  White also filed a motion to compel the following day, on February 10, 2015, which ultimately the court accepted as timely filed under the relevant excusable neglect standard.  Unlike specifications 9 and 13, discussed in the preceding section of this Report, however, White did not *specifically or directly* raise any claims as to interrogatory 12 in her first motion for sanctions, which motion was denied without prejudice.  Likewise, White did not *specifically or directly* raise any claims as to interrogatory 12 in her motion to compel.[8]

She begins the instant motion by stating that "The primary issue related to discovery with respect to the Rule 30(b)(6) motion, is Sacred Heart's response to Plaintiff's Interrogatories No. 1 - 13, and, in particular, Interrogatory No. 12, served on December 27, 2013."  Thus, her instant motion for sanctions as to interrogatory 12, while framed as centered on the Rule 30(b)(6) deposition of Ms. Brown, in actuality turns on a discovery response provided by Sacred Heart <u>years ago</u> and is in the nature of a motion to compel.  White has not shown good cause for failing to

---

[8] As discussed above, White twice informed the court that the issues concerning specification number 15 in actuality concerned interrogatory 12 (*see* pp. 6 n.2 & 7 n.3, *supra*), and White raised issues as to specification number 15 in both her first motion for sanctions <u>and</u> in her motion to compel, <u>the latter of which she reported as fully resolved</u>.  It could therefore be said that White previously reported to the court that she had <u>resolved</u> the matters in dispute regarding interrogatory 12 (as she did with respect to specifications numbered 7, 8, and 15; interrogatory number 15; and RFP number 54).  Thus, the motion for sanctions as to interrogatory number 12 could alternatively be denied as previously resolved.

timely seek a court-ordered response to interrogatory number 12; nor has she shown good cause for reopening the discovery period at this late juncture.

As this court explained in <u>Williams v. Blue Cross & Blue Shield of Florida, Inc.</u>, No. 3:09cv225/MCR/MD, 2010 WL 3419720, at *1 (N.D. Fla. Aug. 26, 2010):

> Under Fed. R. Civ. P. 16(b)(4), the court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(4)(b).  Good cause requires a showing that the schedule cannot 'be met despite the diligence of the party seeking the extension.'" <u>Sosa v. Airprint Sys., Inc.</u>, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 Advisory Committee's Note).  Mere "'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'"  <u>Will-burn Recording & Pub. Co. v. Universal Music Group Records</u>, No. 08–0387, 2009 WL 1118944, at *2 (S.D. Ala. 2009) (slip op.) (quoting <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992)).  In other words, the moving party cannot establish the diligence necessary to show good cause if it had full knowledge of the information before the scheduling deadline passed or if the party failed to seek the needed information before the deadline.  <i>See</i> <u>S. Grouts & Mortars, Inc. v. 3M Co.</u>, 575 F.3d 1235, 1241–42 n.3 (11th Cir. 2009).  "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry."  <u>Lord v. Fairway Elec. Corp.</u>, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002); <i>see also</i> <u>Beauregard v. Continental Tire North America, Inc.</u>, 2009 WL 464998, at *2 (M.D. Fla. Feb. 24, 2009) (slip op.) (quoting <u>Sosa</u> and the Advisory Committee's Notes for the proposition that "[a] finding of good cause is reserved for situations in which the schedule cannot be met despite the diligence of the party seeking the extension") (internal marks omitted).  As the court noted in <u>Moyer v. Disney World Co.</u>, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000), "[a] Scheduling Order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'"  <i>Id.</i> (quoting <u>Payne v. Rider Sys., Inc. Long Term Disability Plan</u>, 173 F.R.D. 537, 540 (M.D. Fla. 1997)).

"The object of Rule 16(b) is to 'assure that at some point . . . the pleadings will be fixed.'" <u>Vazquez v. LCM Inv. Group, Inc.</u>, 2006 WL 4835922, at *2 (M.D. Fla. Aug. 24, 2006) (citing Fed. R. Civ. P. 16 Advisory Committee's Note). "Recognizing the perils of disorderly litigation, '[t]he Eleventh Circuit has consistently held that motions filed after a deadline imposed by a court should be denied as untimely.'" <u>Moyer</u>, 146 F. Supp. 2d at 1252 (quoting <u>Payne</u>, 173 F.R.D. at 540).

*Id*.

Having failed to show good cause for modifying this court's scheduling order, White's motion as to interrogatory number 12 should be denied. Stated simply, the instant motion as to interrogatory number 12 is in actuality a motion to compel, and the motion, filed November 25, 2015—or ten months after the close of discovery—is due to be denied as untimely (to the extent White did not previously report that this discovery issue was resolved).

- ● Errata Sheet Completed by Ms. Brown

White states that on February 13, 2015, Patricia Brown submitted a document titled "Corrections to the Deposition of Patricia Brown," which "made substantive changes" to various specifications and was not submitted under oath (ECF No. 173 at 7–9). Rule 30(e) provides as follows:

(1) Review; Statement of Changes.     On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

    (A)    to review the transcript or recording; and

    (B)    if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1).

As can be seen from the plain text of the rule, there is no requirement that changes be made under oath.  Additionally, substantive changes are permitted, as long as reasons for such changes are provided.  Here, Ms. Brown submitted a three-page errata sheet that lists corrections or clarifications to her deposition testimony and corresponding explanations.  The errata sheet thus fully complies with Rule 30 (*see* ECF No. 175-1 at 2–4).  While courts have found that a deponent cannot "generate from whole cloth a genuine issue of material fact (or eliminate the same) simply by re-tailoring sworn deposition testimony to his or her satisfaction," this is clearly not what happened here; indeed, Sacred Heart did not prevail on summary judgment, and neither the timing nor nature of the corrections calls into question Ms. Brown's motivations.  *See, e.g.*, EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 267 (3d Cir. 2010) (citing Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) ("While the language of [Rule] 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable

summary judgment.")) (other citations omitted).  Here, in large part Ms. Brown merely clarified the nature of the materials she reviewed and with whom she spoke prior to, and in preparation for, her deposition.[9]  *Cf.* Norelus v. Denny's, Inc., 628 F.3d 1270, 1282 (11th Cir. 2010) ("the improper submission of the massive errata document [which altered the deposition testimony in 868 ways] rendered the eight days spent on Norelus' deposition a waste of time and money to say nothing of the time the attorneys were forced to spend on the issues created by the document itself"). To the extent any correction on the errata sheet has any bearing on the claims and defenses in this action or may be used to impeach Ms. Brown's credibility, and the area of inquiry is otherwise deemed permissible by the district court during the course of the trial of this action, it is the recommendation of the undersigned that White's counsel be permitted to cross-examine Ms. Brown regarding the correction(s) rather than re-depose Ms. Brown.

Conclusion

---

[9] In response to White's contentions that Ms. Brown was ill-prepared for her deposition, Sacred Heart attached to its response to White's instant motion for sanctions an affidavit from Ms. Brown (*see* ECF No. 185-3 at 1–3).  In pertinent part, Ms. Brown avers that she spent approximately forty-eight hours preparing for the deposition, and that her preparation included such things as reviewing the pleadings in this action, the documents exchanged in discovery, and materials provided by Sacred Heart's counsel; meeting with attorneys and Sacred Heart officials; and corresponding with counsel (*id.*).

For all of the foregoing reasons, the undersigned concludes that White has not established entitlement to the relief she seeks and therefore her renewed motion for sanctions should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

That Plaintiff's Renewed Motion for Rule 37(d) Sanctions (ECF No. 173) be **DENIED**.

At Pensacola, Florida, this 11<u>th</u> day of March  2016.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**